# 2007 DTA 79

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL III**

HERIBERTO COLÓN COLÓN
Recurrido

v.

MUNICIPIO DE SAN JUAN
Recurrente

Núm. KLRA-2007-00283

San Juan, Puerto Rico, a 12 de junio de 2007

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Morales Rodríguez

Morales Rodríguez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Artículo 12.006 de la Ley de Municipios Autónomos requiere que los alcaldes establezcan un plan de clasificación y retribución de puestos dentro de sus alcaldías. 21 L.P.R.A., sec. 4556. Sus disposiciones al respecto son muy minuciosas. *"Se establecerá —dice— una estructura racional de funciones que propenda a la mayor uniformidad posible y que sirva de base para las distintas acciones del personal."* La ley requiere *"que puedan identificarse unidades lógicas de trabajo"* y que estén *"integradas por grupos de deberes y responsabilidades"*. Cada puesto deberá ser una *"unidad básica de trabajo"* con *"una descripción clara y precisa"* y con indicación *"del grado de autoridad y supervisión adscrito"*.

El detalle de esta legislación es tal, que sólo podemos inferir la intención de no dar margen a la ambigüedad al momento de hacer esos planes. Añade el citado Artículo 12.006:

*"El propósito de la clasificación de puestos es agrupar en clases aquellos puestos que sean de naturaleza similar: Ostentarán la misma clasificación todos los puestos que sean iguales o sustancialmente similares en cuanto a la naturaleza y el nivel de dificultad del trabajo a desempeñarse a base de los deberes complejidades y grado de responsabilidad y autoridad. Se les podrá exigir de sus incumbentes requisitos análogos las mismas pruebas para su selección y la misma retribución. Dichos puestos se agruparán en clases de puestos."*

Cada clase de puesto tendrá un título oficial descriptivo de sus elementos básicos comunes, incluyendo su naturaleza, complejidad y responsabilidad del trabajo. Se preparará una especificación para cada clase incluida en el plan de clasificación. La especificación contendrá una descripción clara de la naturaleza y complejidad del trabajo, grado de autoridad y responsabilidad requerida de sus incumbentes, tareas típicas, requisitos mínimos de preparación, experiencia, conocimiento, habilidades y destrezas que deben reunir los empleados en la clase, duración del período probatorio para los puestos y sueldo mínimo y máximo asignado a la clase. La especificación de clases quedará formalizada con la firma del alcalde. El Presidente de la Legislatura hará lo propio con el plan de clasificación de los empleados de confianza de la Legislatura.

La legislatura autonómica del Municipio de la Ciudad Capital San Juan Bautista, mediante la Ordenanza Núm. 43 del 24 de junio de 1999, estableció el plan de clasificación y retribución que le fuera propuesto por una firma consultora. El 11 de julio de 1999, la entonces alcaldesa, Honorable Sila M. Calderón, emitió la Orden

Ejecutiva Núm. 3 mediante la cual creó un Comité Especial para, entre otras cosas, atender solicitudes individuales de revisión de la nueva clasificación. Mediante una lista de preguntas y respuestas, la Alcaldesa invitó al personal que no estuviere de acuerdo con su *"nueva clasificación"* a someter su solicitud de revisión en 15 días del recibo de la comunicación oficial.

Antes de entrar en vigor el nuevo Plan de Clasificación y Retribución, don Heriberto Colón Colón estaba clasificado como Funcionario Ejecutivo IV, del Departamento de Salud, Complejo Médico Social, del Municipio de San Juan. Devengaba un salario mensual de $1,265.00. Como parte del proceso se le requirió que llenara un Cuestionario de Clasificación. En este cuestionario, los empleados informaban, entre otras cosas, las funciones que estaban llevando a cabo como empleados del Municipio. Don Heriberto completó el Cuestionario y allí especificó el trabajo que realizaba:

*"a. Planificar, organizar, dirigir y controlar el trabajo del Departamento de Admisión, Facturación y Cobro.*

*b. Diseñar plan de trabajo anual.*

*c. Recopilar, revisar las facturas de planes médicos, manteniendo comunicación con las agencias pertinentes.*

*d. Supervisar el cumplimiento de normas y procedimientos de recaudaciones auxiliares.*

*e. Preparar presupuesto del Departamento.*

*f. Recopilar datos estadísticos para la confección del informe de costos.*

*g. Asistir a seminarios y adiestramientos con agencias de seguros.*

*h. Llevar a cabo reuniones con empleados.*

*i. Orientar pacientes, familiares o tutores, sobre el sistema de Admisión, Facturación y Cobros.*

*j. Rendir informes mensuales, anuales y específicos.*

*k. Preparar y distribuir Ley 56 a empleados.*

*l. Mantener cuadre de subsidiaria en ingresos con el Departamento de contabilidad de ingresos en finanzas."* (Énfasis nuestro)

Según surge del Cuestionario de Clasificación, don Heriberto estaba facultado para resolver problemas por iniciativa propia; recibía instrucciones generales de su supervisor; su trabajo era revisado por resultados obtenidos; supervisaba directamente a cinco empleados; y autorizaba sus licencias de vacaciones y enfermedad. El puesto de don Heriberto fue clasificado como Supervisor, con un sueldo de $1,429. De inmediato solicitó la revisión. El Comité la halló con lugar y dictaminó que debía ser clasificado como Supervisor de Sección con un salario de mensual de $1,943.00. Don Heriberto impugnó, también, esa determinación. El Comité Especial se sostuvo. Entonces apeló a la Junta de Apelaciones del Sistema de Personal. La hoy Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH), después de aquilatar la prueba resolvió:

*"En cuanto a la naturaleza del puesto se refiere, el puesto de Supervisor de Sección es uno de trabajo administrativo que consiste en supervisar, delegar y coordinar las actividades de una unidad o programa de un departamento u oficina del Municipio de San Juan. Sin embargo, el Apelante ejercía trabajo profesional y*

*administrativo que consistía en planificar, dirigir supervisar y coordinar los trabajos que se llevan a cabo en una división de un departamento u oficina del Municipio de San Juan."*

De la prueba presentada, surge que las funciones que realizaba el Apelante al momento de realizarse el estudio para el Plan eran superiores a las de la clasificación asignada. **Si comparamos la lista de tareas esenciales enumeradas por la Apelante en el Cuestionario de Clasificación y la evidencia presentada durante la celebración de la vista pública, con las Especificaciones de Clase de Supervisor(a) de Sección y Gerente de División, podemos llegar a la conclusión que el puesto del Apelante debió ser clasificado como Gerente de División.**

Entendemos que no puede ser Supervisor de Sección, ya que esta clase lo que conlleva es la supervisión, delegación y coordinación de las actividades de una unidad o programa de un departamento u oficina del Municipio. Este no requiere ni vislumbra, la planificación, dirección, supervisión y coordinación de los trabajos que se llevan a cabo en una división de un departamento u oficina del Municipio. De la prueba se desprende que para cuando el apelante cumplimentó el Cuestionario de Clasificación, se encontraba bajo la supervisión de una Directora Ejecutiva y tenía bajo su supervisión directa varios empleados (un Contador II, un Oficinista de Contabilidad, un Recaudador y una Secretaria y una Oficinista de Admisión. También, indicó que debido a su trabajo las responsabilidades eran mayores, ya que **dirigía, coordinaba, supervisaba y planificaba todas las actividades de la División de Admisiones, Facturación, Cobro, Recaudaciones y Servicios Fiscales.** Es importante señalar que la Supervisora del Apelante, quien era la Directora Ejecutiva del Complejo Médico Social del Municipio, certificó su cuestionario de clasificación y no lo objetó. Además, enumeró los deberes y responsabilidades de mayor importancia en el puesto que ocupaba el apelante, mencionando: 1) Planificar, organizar, dirigir y controlar el trabajo del Departamento de Admisión, Facturación y Cobros; 2) Recopilar, revisar las facturas de planes médicos manteniendo comunicación con las agencias pertinentes; y 3) Supervisar el cumplimiento de normas y procedimientos de recaudadores auxiliares.

Dado el hecho que la naturaleza, complejidad y responsabilidad de las tareas que el Apelante realizaba no están comprendidas dentro de la clase asignada al implantarse el nuevo Plan de Clasificación y Retribución, el apelante fue incorrectamente clasificado. **Entendemos que la decisión fue errada, ya que la misma estuvo basada en el organigrama del Complejo Médico Social del Municipio de San Juan, dando poca o ninguna importancia a las tareas y responsabilidades que el apelante realizaba.** (Énfasis nuestro)

De esa decisión, el Municipio de San Juan recurre ante nosotros. Plantea:

*"Erró la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público en su interpretación de derecho en lo que concierne a la implantación del Plan de Clasificación y Retribución que entró en vigor el 1 de marzo de 1999."*

La argumentación jurídica de lo que parece ser un planteamiento de estricto derecho culmina con una alegación fáctica:

*"Es un hecho claro y contundente el que el recurrido-apelante **nunca tuvo ante sí la supervisión de varias secciones como lo establece el organigrama.** Véase Apéndice, Exhíbit 18, pág(s) 61. El puesto de Gerente de División requiere las mismas funciones que realiza un Supervisor de Sección **con la diferencia imprescindible que sus funciones van dirigidas a varias secciones** como en nuestro caso es la sección de personal, estadísticas y facturación. Entendemos que CASARH está correcto en reconocer las funciones del recurrido-apelante. No obstante, erró al aplicar el derecho y pasar por alto el organigrama que fue admitido en evidencia."* (Énfasis nuestro)

La citada es, en realidad, una impugnación de la determinación esencial de la CASARH: *"Entendemos que la*

*decisión fue errada, ya que la misma estuvo basada en el organigrama del Complejo Médico Social del Municipio de San Juan, dando poca o ninguna importancia a las tareas y responsabilidades que el apelante realizaba."*

Hemos leído la argumentación jurídica que nos somete el Municipio. Cita como autoridad primaria a *Nigaglioni v. Depto. de Salud*, 149 D.P.R. 180 (1999). En ese caso, el Tribunal Supremo enfrentó otra cuestión: si en un proceso de reclasificación —efectuado al.amparo de la Ley·de Retribución Uniforme y su Reglamento que no es aquí aplicable—, los empleados tienen derecho a *"estar ubicados en el mismo tipo intermedio [de los pasos dentro de la escala de salarios] que tenían antes de la implantación de un nuevo plan"*. El Tribunal Supremo, luego de explicitar los términos de la ley y el reglamento aplicable, dictaminó que no. A la página 191 indica el porqué: *"no existe mandato estatutario o reglamentario alguno de donde se derive un derecho propietario de los empleados a los tipos intermedios que ostentan bajo una estructura retributiva"*.

Como es obvio, esa decisión no puede extrapolarse a una ley que no trate de tipos intermedios al amparo de la ley y reglamento allí interpretados. Al amparo de otra ley, como es la de este caso, puede haber un derecho propietario de un empleado a ser clasificado según el puesto que corresponda al trabajo que éste realiza. Expresó el Tribunal Supremo en *Nigaglioni*, a la página 190:

*"No hay duda de que en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución. 3 L.P.R. A. sec. 760a. Véase Guzmán v. Depto. de Hacienda, supra. Esta política pública, a su vez, se enmarca en "el derecho de todo trabajador (...) a recibir igual paga por igual trabajo", que consagra la Constitución del Estado Libre Asociado de Puerto Rico Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 352."*

En este caso ante nosotros, el Municipio debía actuar de conformidad con la Ley de Municipios Autónomos, la Ordenanza Municipal Núm. 43 y la Orden Ejecutiva Núm. 3. Don Heriberto, al amparo de esa normativa, reclamó su derecho a *"igual paga por igual trabajo"*. Solicitó, dentro del proceso creado para ello, que se le clasificara dentro de la unidad lógica de trabajo, según el *"grupo de deberes y responsabilidades"* que realiza. Se asume que el plan sea *"una estructura racional de funciones que propenda a la mayor uniformidad posible y que sirva de base para las distintas acciones del personal"*.

Al momento de revisar la actuación del Municipio, la CASARH no descansó en un organigrama, sino en el plan de clasificación del Municipio con sus *"unidades lógicas de trabajo"* que están *"integradas por grupos de deberes y responsabilidades"*. Revisó la información documental y, ante todo, la testimonial que se vertió durante la vista oral. Halló que el nivel de supervisión de don Heriberto era mucho mayor que la que el Municipio alcanzó a reconocerle, que corresponde al puesto de Gerente de División.

Nótese que, específicamente, el puesto de Gerente de División describe trabajos de *"planificar, dirigir, supervisar y coordinar (...)* **en una División de un departamento** *u oficina del Municipio de San Juan."* Mientras que el puesto de Supervisor de Sección se limita a la supervisión *"de una* **Unidad o programa de su departamento**". El Municipio argumenta: *"El puesto de Gerente de División requiere las mismas funciones que realiza un Supervisor de Sección con la diferencia imprescindible que sus funciones van dirigidas a **varias secciones** como en nuestro caso es la sección de personal, estadísticas y facturación."* En vano hemos buscado la referencia a *"varias secciones"* en la descripción oficial aprobada del puesto de Gerente de División. La CASARH, fundándose en la estructura racional de funciones establecida por el Municipio, escuchó y dirimió la prueba. Halló que don Heriberto *"dirigía, coordinaba, supervisaba y planificaba todas las actividades de la División de Admisiones, Facturación, Cobro, Recaudaciones y Servicios Fiscales."* Tratándose de *"una división de un departamento"* y no de *"una unidad o programa de un departamento"*, es razonable concluir que don Heriberto debía ser clasificado como Gerente de División.

Es asunto trillado que las determinaciones que sobre los hechos hacen las agencias administrativas merecen gran deferencia por la experiencia y el conocimiento especializado que ellas poseen en los asuntos que le han sido encomendados. *Otero Mercado v. Toyota,* resuelto el 3 de febrero de 2005, **2005 JTS 13**, 163 D.P.R. ____ (2005). La sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme*, 3 L.P.R.A. sec. 2175, establece el alcance de la revisión judicial de una decisión administrativa, y sobre las determinaciones de hechos dispone: *"Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".* En *Otero Mercado v. Toyota, supra,* nos explicó el Tribunal Supremo lo siguiente sobre la doctrina de deferencia contenida en la ley:

*"[E]l criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". Como hemos definido en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".*

No será sustancial la evidencia en la cual la agencia base su determinación si la parte afectada demuestra que *"existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".* *Misión Industrial v. Junta de Planificación,* 146 D.P.R. 64, 131 (1998). En este caso no se nos somete otra prueba que no sea un organigrama, documento que hallamos insuficiente para reducir o menoscabar el valor probatorio de la evidencia considerada por la CASARH a la luz de las normas que el propio Municipio estableció. El organigrama no puede sustituir el plan de clasificación con su descripción formal de deberes y responsabilidades. No puede cambiar las hipótesis fácticas para la clasificación de cada puesto, que según la ley debe contener *"una descripción clara y precisa"* y con indicación *"del grado de autoridad y supervisión adscrito".*

En virtud de lo expuesto se, confirma la resolución impugnada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones